IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| WIREGRASS METAL TRADES COUNCIL A.F.L.-CI.O., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO.: 1:13-cv-84-MEF (WO– Do Not Publish) |
| SHAW ENVIRONMENTAL & INFRASTRUCTURE, INC., | ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Wiregrass Metal Trades Council A.F.L.-CI.O.'s ("Plaintiff" or "Union") Motion for Preliminary Injunction (Doc. #2), which the Court will construe as a motion to compel arbitration. Having considered the motion, the parties' arguments, and the record as a whole, the Court finds that the Union's motion is due to be GRANTED.

### I. JURISDICTION AND VENUE

The Court has subject-matter jurisdiction over this case under 28 U.S.C § 1331 (federal question). The parties do not contend that the Court lacks personal jurisdiction over them, nor do they dispute that venue is proper under 28 U.S.C. § 1391(b), and the Court finds adequate allegations to support both.

### II. FACTS AND PROCEDURAL HISTORY

The Union is a labor organization that represents employees of Defendant Shaw

Environmental & Infrastructure, Inc. ("Shaw" or "Defendant") for purposes of collective bargaining over the terms and conditions of employment for Shaw's employees. The Union and Shaw were parties to a certain Collective Bargaining Agreement ("CBA"), which was effective from October 1, 2008, until March 31, 2013. The CBA covered represented employees who performed work for Shaw at Fort Rucker Army Base in Alabama, and the events that form the basis of this lawsuit occurred while the CBA was in effect (Doc. #1, ¶5, Doc. #15, ¶5).

Jack Endicott ("Endicott") is a former Shaw employee who was represented by the Union and covered by the CBA during his employment with Shaw. Shaw terminated Endicott's employment on February 16, 2010, following allegations that he stole a piece of equipment from Fort Rucker and sold it to a third-party.

The CBA at issue here contained a three-step process for resolving all disputes, complaints, and grievances in connection with the interpretation or application of the terms of the CBA. Article 8, Section 1, of the CBA provides:

> The parties to this agreement, in the interest of resolving all disputes, complaints or grievances, in connection with the interpretation or application of the terms of this Agreement, have settled upon the following orderly and peaceful procedures:
>
> Step One: The Employee shall promptly report to their steward any complaints, disputes or grievances, which they believe requires adjustment. The steward shall promptly investigate to ascertain whether the complaint has merit and report the results thereof to the resident of the Metal Trades Council or his designee. The Union shall be the sole judge as to the validity of any grievance and in the event the Metal Trades Council President or his designee believes the grievance has merit shall promptly attempt to resolve the dispute with the

> Project Manager.  If the dispute is not resolved, the matter shall be referred in writing by the Union to Step Two, within (10) days.  If the matter is not referred within ten (10) days, the matter shall be closed.
>
> Step Two: The Metal Trades Council President or his designee shall refer the matter in writing to the Labor Relations Manager or his designee.  The parties will then meet in an effort to settle the grievance.  If no satisfactory settlement is arrived at within five (5) days, the Union may within five (5) additional days, refer the matter to Step Three, Arbitration.
>
> Prior to submitting a grievance to arbitration, the Union and employer may elect to utilize the services of the Federal Mediation and Conciliation Service to mediate the dispute.
>
> Step Three: Failure to reach a settlement at Step 2 or failure to successfully mediate the dispute shall constitute a basis for submittal of the grievance to arbitration.  The Union shall request the Federal Mediation and Conciliation Service to supply both the Employer and the Union with a list consisting of five (5) individuals who would serve as Arbitrator.  The parties may then invoke the usual procedures to strike.  The decision of the Arbitrator shall be final and binding upon both parties.  The cost of the arbitrator shall be shared equally by both parties.  Each party shall bear the costs of presenting their case.

(Doc. #1, ¶ 7.)

On February 19, 2010, three days after Endicott's termination, the Union filed a grievance with Shaw, as required under Step One of the CBA, alleging a failure by Shaw to hold a disciplinary action for termination and inappropriate termination.  Shaw received Plaintiff's written grievance on February 22, 2010, and its project manager at Fort Rucker denied the grievance that same day, finding that Shaw had followed proper procedure under the CBA.

Following the denial of its February 22, 2010 grievance, the Union contends that it

responded to Shaw in writing on March 2, 2010, expressing its refusal to accept the denial of its February 22, 2010 grievance. The Union further claims that, following its March 2, 2010 letter, the parties verbally agreed to postpone processing the grievance until Endicott's related criminal matters were resolved.

On June 6, 2011, Endicott was acquitted of the criminal charges. Shortly thereafter, the Union claims that it requested Shaw reopen the grievance under the terms of the CBA, but it did not respond. The Union contacted Shaw again on August 2, 2012, and requested that the grievance be reopened. On August 15, 2012, Shaw denied the Union's request to reopen the grievance, stating that the grievance was not timely processed, and, therefore, the matter was closed. The Union has since initiated the arbitration process, and on October 4, 2012, the Union began the selection process for arbitrators through the Federal Mediation and Conciliation Service, but Shaw has refused to participate.

On February 11, 2013, the Union moved the Court for a preliminary injunction ordering Shaw to submit to final and binding arbitration, or in the alternative, to hear oral argument on the matter (Doc. #2). Shaw opposes the Union's motion. Having considered the arguments of the parties and the record as a whole, the Court concludes that the Union's motion should be treated as one to compel arbitration and, thus, will address the parties' arguments as such below.

### III. STANDARD OF REVIEW

The Federal Arbitration Act ("FAA") permits the use of arbitration and specifically

authorizes individuals to contract for arbitration. *See* 9 U.S.C. §§ 1– 10 (1991).[1] In 1925, Congress enacted the FAA to offset the "hostility of American courts to the enforcement of arbitration agreements." *Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 111 (2001). Thus, the FAA establishes "a federal policy favoring arbitration." *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226 (1987) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983)). As the FAA evinces the "liberal federal policy favoring arbitration," *Moses H. Cone Mem'l Hosp.,* 460 U.S. at 24, this legislation "compels judicial enforcement of a wide range of written arbitration agreements." *Circuit City*, 532 U.S. at 111. Indeed, under the FAA, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp*., 460 U.S. at 24–25. Therefore, courts are encouraged to rigorously enforce agreements to arbitrate. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985).

Federal courts primarily invoke the FAA to give effect to contracting parties' expectations for resolving disputes. Accordingly, the FAA revolves around contract

---

[1] Pursuant to the FAA, a written arbitration "provision in any . . . contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C.A. § 2 (1991). The effect of Section 2 is "to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Section 3 provides for the stay of proceedings in federal district courts when an issue in the proceedings is referable to arbitration. *See* 9 U.S.C. § 3 (1991). Section 4 provides for orders compelling arbitration when one party has failed, neglected, or refused to comply with an arbitration agreement. *See* 9 U.S.C. § 4 (1991); *Boyd v. Town of Hayneville, Ala.,* 144 F. Supp. 2d 1272, 1275 (M.D. Ala. 2001).

interpretation. *See AMF Inc. v. Brunswick Corp.,* 621 F. Supp. 456, 460 (E.D.N.Y. 1985) ("[A]rbitration is a creature of contract, a device of the parties rather than the judicial process. If the parties have agreed to submit a dispute for a decision by a third party, they have agreed to arbitration."); *accord Bullock v. United Benefit Life Ins. Co.*, 165 F. Supp. 2d 1259, 1261 (M.D. Ala. 2001) ("The Court must look to the intent of the parties to determine which claims are arbitrable, and in so doing, the Court looks to the wording of the arbitration clause and gives all provisions of the contract their full effect.").

## IV. DISCUSSION

A court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate that dispute. To satisfy itself that such agreement exists, the court must resolve any issue that calls into question the formation or applicability of the specific arbitration clause that a party seeks to have enforced. *See Granite Rock Co. v. Int'l Brotherhood of Teamsters,* 130 S. Ct. 2847, 2855 (2010). However, "[o]nce it is determined . . . that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator." *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557 (1964). Thus, "matters of procedural arbitrability, such as whether a party seeking arbitration has waived its right to arbitration by failing to comply with procedural requirements set forth in the arbitration agreement, are for the arbitrator to decide." *Id.* at 558–59. This includes procedural prerequisites such as "time limits, notice, laches, estoppel, and other conditions

precedent to an obligation to arbitrate . . . ". *Klay v. United Healthgroup, Inc.,* 376 F.3d 1092, 1107 (11th Cir. 2004). Indeed, even in circumstances where the procedural issue is distinct from the merits of the grievance and a party has clearly violated the procedural prerequisites of an arbitration agreement, procedural questions that bear on the ultimate question of arbitrability are to be decided by the arbitrator, not the Court. *See United Steelworkers of Am., AFL-CIO v. McGraw-Edison Power Sys. Div.,* 71-647-S, 1971 WL 870 (N.D. Ala. Dec. 13, 1971).

In this case, there is no dispute that the CBA includes a provision that requires arbitration of all complaints, disputes, or grievances between the Union and its represented members and Shaw. (*See* Docs. #1, #15.) Indeed, Shaw does not dispute that the substance of the Union's grievance is arbitrable. What Shaw does dispute, however, is whether the Union can procedurally proceed with the grievance, arguing that because the Union failed to submit its February 22, 2010 grievance to Step Two under the CBA within the requisite ten day time period, the matter is closed and there is no grievance to arbitrate. The Court does not find this argument persuasive.

There is no dispute that the Union submitted a written grievance on February 19, 2010, that this grievance was received by Shaw on February 22, 2010, and that Shaw's project manager at the Fort Rucker facility denied this grievance that same day, stating that the Union had followed proper procedure under the CBA. According to Step One of the CBA, Plaintiff had ten days (or until March 4, 2010) to refer the matter to Step Two if the

dispute was not resolved.  On March 2, 2010, after the matter was not resolved, the Union claims that it submitted a written response to Shaw disputing the denial of its February 22, 2010 grievance, which, if made, was well within the ten day referral period contemplated under Step One of the CBA.

Shaw argues that the Union's grievance is untimely and, therefore, not arbitrable because the Union waited until August 2, 2012, to request that Shaw reopen the grievance after Endicott was acquitted of the criminal charges.  This argument fails for two reasons.  First, this argument wholly ignores the Union's March 2, 2010 written objection to Shaw's denial of its February 22, 2010 grievance and further ignores the Union's claim that it also requested that the grievance be reopened on June 13, 2011.  Second, and more importantly, taking the facts in the Union's complaint as true, there is at least a colorable argument that the Union did comply with the procedural timing requirements of the CBA when it submitted its written objection to Shaw's denial of its grievance on March 2, 2010, well within ten days of Shaw's February 22, 2010 denial.  As such, because it is the role of the arbitrator, and not the Court, to decide procedural issues that arise out of an arbitrable dispute, including timeliness and credibility issues that affect or relate to timeliness, the Court finds that the Union's motion has merit and is due to be granted.  *See John Wiley & Sons, Inc.,* 376 U.S. at 557; *see also Howsam,* 537 U.S. at 84-85 ("[W]hether time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide."); *Klay,* 376 F.3d at 1107 (same).  This will allow for an arbitrator to

pass on the timeliness and, consequently, the arbitrability of the Union's claims.

## V. CONCLUSION

Based on the foregoing, it is hereby ORDERED as follows:

1. Plaintiff Wiregrass Metal Trades Council A.F.L.-CI.O.'s Motion for Preliminary Injunction (Doc. #2), which the Court construes as a motion to compel arbitration, is GRANTED. The parties to this action are hereby ORDERED to submit all controversies, claims, or disputes between them to arbitration in accordance with the terms of the agreement between them.

2. The parties are further ORDERED to file a jointly prepared report on the status of this case. The first such report shall be filed on September 13, 2013, and the parties shall thereafter file a jointly prepared report **on the first Tuesday of every month** until such time as the parties jointly stipulate that this action can be dismissed. **The jointly prepared report shall indicate the status of the arbitration proceedings and the expected date those proceedings will be concluded.**

DONE this the 21st day of August, 2013.

                                                        /s/ Mark E. Fuller
                                        UNITED STATES DISTRICT JUDGE