IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

WIREGRASS METAL TRADES           )
COUNCIL AFL-CIO,                 )
                                 )
          Plaintiff,             )
                                 )
     v.                          )          CASE NO. 1:13-CV-084-WKW
                                 )                    [WO]
SHAW ENVIRONMENTAL &             )
INFRASTRUCTURE, INC.,            )
                                 )
          Defendant.             )

**MEMORANDUM OPINION AND ORDER**

Plaintiff Wiregrass Metal Trades Council AFL-CIO ("Wiregrass"), a workers' union within the meaning of the Labor Management Relations Act, filed suit on February 11, 2013, against Defendant Shaw Environmental & Infrastructure, Inc. ("Shaw") for breach of a collective bargaining agreement ("CBA"). On August 21, 2013, Wiregrass's motion to compel arbitration (Doc. # 2) was granted (Doc. # 17), and an arbitrator heard the matter on December 5, 2013. On March 14, 2014, the arbitrator submitted her decision to the parties, ruling in favor of Wiregrass, and three days later Wiregrass moved to dismiss the present litigation (Doc. # 24). Shaw opposed Wiregrass's motion to dismiss and moved to vacate the arbitrator's award. (Doc. # 26.) Upon referral (Doc. # 35), the Magistrate Judge recommended that Shaw's motion be granted and the

arbitrator's award vacated (Doc. # 39).  Both parties timely filed Objections to the Recommendation. (Docs. # 40, 41.)  After careful consideration of the record, the parties' briefs, the applicable case law, and the Recommendation, the court finds that the Recommendation is due to be adopted, Shaw's motion (Doc. # 26) is due to be granted, and the arbitrator's award is due to be vacated.

## I.  STANDARD OF REVIEW

The court reviews *de novo* "those portions of the . . . [R]ecommendation[ ] to which objection is made."  28 U.S.C. § 636(b)(1).

## II.  DISCUSSION

### A.  <u>Background</u>

Wiregrass alleges that Shaw breached the parties' CBA when it suspended and ultimately terminated Jack Endicott, a Shaw employee covered by the CBA. With its complaint, Wiregrass filed a motion for a preliminary injunction, which was construed as a motion to compel arbitration.  Shaw opposed the motion, arguing that it had no contractual obligation to arbitrate Wiregrass's claims because Wiregrass failed to perform the preconditions necessary to bring the grievance into arbitration.  After reviewing the arguments of counsel and relevant case law, the court granted Wiregrass's motion, and the arbitration process began.

The parties jointly selected an arbitrator, and an arbitration hearing was conducted on December 5, 2013.  During the hearing, the arbitrator narrowed the

dispute to two central inquiries: (1) Was the grievance procedure properly followed? and if so (2) Did Shaw have just cause to terminate Mr. Endicott?  After a day of testimony, an examination of the controlling CBA, and a review of various exhibits, the arbitrator determined that Wiregrass had properly brought the grievance into arbitration and that Shaw did not have just cause to terminate Mr. Endicott.

While the arbitrator recognized that Wiregrass did not adhere strictly to the time lines provided in the detailed three-step procedure through which a grievance would trigger arbitration review, she highlighted that the CBA contained a modification provision.  Specifically, the arbitrator cited Article 8, Section 3 of the CBA, which provides that the right to "change, alter, amend, modify, add to, or delete from [the CBA] is the sole prerogative of the contracting parties."  (Doc. # 26, Ex. B, at 15.)   Reviewing the communications that occurred between Wiregrass's president and Shaw's labor relations manager from the time of Mr. Endicott's suspension to the filing of the present lawsuit, the arbitrator determined that the parties chose to invoke Article 8, Section 3's modification procedure and suspended the ordinary grievance-procedure time lines in light of Mr. Endicott's government investigations, military police charges, and magistrate hearings.  The arbitrator then determined that once Wiregrass discovered that all inquiries and investigations into Mr. Endicott's actions were complete, "it acted in good faith in

requesting that the tabled grievance" be reopened and timely and appropriately moved the grievance through Step Two and Step Three and into arbitration.  (Doc. # 26, Ex. B, at 16.)

Because the arbitrator determined that Wiregrass had properly invoked the modified procedures of the CBA to bring its grievance into arbitration, she turned to the second inquiry – whether Shaw had just cause to terminate Mr. Endicott. The arbitrator concluded that just cause required "that [Shaw] investigate before administering discipline and that the investigation be fair and reasonable."  (Doc. # 26, Ex. B, at 17.)  Applying this standard to the events leading to Mr. Endicott's termination, the arbitrator highlighted several perceived inadequacies in Shaw's conduct.

First, she noted that Shaw did not conduct its own investigation into Mr. Endicott's actions and, instead, relied entirely on the investigation of the military police.   Second, the arbitrator found it significant that Shaw never gave Mr. Endicott the opportunity to tell his side of the story and ultimately terminated him based on charges that were ultimately thrown out by a magistrate judge.  Finally, the arbitrator credited Mr. Endicott's testimony that he did not know the property in question was stolen and determined that Mr. Endicott could not "be said to have violated a policy prohibiting possession of government property when he did not

know the property belonged to the government or that it had been stolen." (Doc. # 26, Ex. B, at 17.)

When considered cumulatively, these facts led the arbitrator to determine that Shaw did not prove by a preponderance of the evidence that it had just cause to terminate Mr. Endicott.  Because the grievance was sustained, the arbitrator then turned to the crafting of a remedy.  While all parties agreed that reinstatement would not be possible in light of the conclusion of Shaw's contract with the government and Mr. Endicott's present medical condition, the arbitrator concluded that Mr. Endicott was entitled to be treated as though he were reinstated. Accordingly, the arbitrator awarded Mr. Endicott "back pay from the date of his termination to the date the successor company replaced Shaw as the service provider" on the government contract, "and all benefits including reimbursement for medical expenses not covered by other sources and COBRA coverage as though he were employed when Shaw lost its contract or was bought out." (Doc. # 26, Ex. B, at 17.)

Three days after the arbitrator issued her judgment in favor of Wiregrass and Mr. Endicott, Wiregrass moved to have the present case dismissed in light of the arbitrator's final and binding decision.  (Doc. # 24.)  Shaw opposed Wiregrass's motion and countered with a motion to vacate the arbitrator's award pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10.  (Doc. # 26.)  Both motions were

referred to a magistrate judge for recommendation pursuant to 28 U.S.C. § 636.
(Doc. # 35.)

## B.    <u>The Recommendation</u>

On December 8, 2014, the Magistrate Judge entered his Recommendation.
Turning first to Shaw's motion to vacate, the Magistrate Judge delineated the
motion into three primary inquiries: "(1) should the court or the arbitrator render a
decision on whether [Wiregrass] satisfied the procedural prerequisites of the
[CBA] . . . to advance this dispute to arbitration; (2) did the arbitrator act within or
exceed her authority when holding that [Shaw] lacked 'just cause' to terminate one
of its employees for unauthorized possession of [g]overnment property; and (3)
was the arbitrator authorized by the [CBA] to formulate and impose a remedy for
violations" of the CBA?  (Doc. # 39, at 1, 2.)

First addressing whether the arbitrator properly possessed the authority to
render a decision on whether Wiregrass satisfied the CBA's grievance procedures,
the Magistrate Judge recognized the similarities between Shaw's post-arbitration
challenge and its initial arguments opposing Wiregrass's motion to compel
arbitration.   While Shaw's present contentions focused on specific perceived
oversteps in the arbitrator's findings as to Step Three of the CBA's grievance
procedures, rather than generally contesting jurisdiction, the Magistrate Judge

6

reiterated the overarching principle that "[w]here there is an agreement to arbitrate, as here, procedural issues such as notice and timeliness are properly left to the arbitrator." (Doc. # 39, at 10.) The Magistrate Judge then determined that it was within the arbitrator's authority to interpret the CBA, *including the provision allowing for modification*, and to review the parties' actions accordingly. In sum, the Magistrate Judge concluded that the arbitrator possessed and acted in conformity with her jurisdiction to decide matters of procedure.

Having concluded that the arbitrator's procedural determinations were within her jurisdiction, the Magistrate Judge next addressed Shaw's contention that the arbitrator impermissibly exceeded her authority when she determined that Shaw lacked just cause to terminate Mr. Endicott. The starting point for this portion of the Recommendation was the CBA, which specified that Shaw possessed, "within its sole discretion, 'just cause' to terminate an employee who is in unauthorized possession of [g]overnment property." (Doc. # 39, at 12.) While the arbitrator quoted this portion of the CBA in her decision, the Magistrate Judge explained that the arbitrator failed to discuss the straightforward effects of the provision in light of her implicit finding that Mr. Endicott had in fact possessed stolen government property. Instead, the arbitrator proceeded to determine that Shaw lacked just cause to terminate Mr. Endicott because (1) Shaw relied entirely

upon the unconcluded investigation of the military police, and (2) Mr. Endicott did not know that the property in question was stolen government property.

In reviewing this determination, the Magistrate Judge highlighted that this was not a case in which the court – or a party – was offering its own *interpretation* of the CBA in lieu of that of the arbitrator's.  Rather, this case presented a situation where the CBA vested exclusive disciplinary control with an employer over specifically delineated acts and the arbitrator found one of the predicate acts in question – Mr. Endicott's admitted possession of stolen government property.  In light of circuit precedent and the CBA provision expressly prohibiting the arbitrator "from adding to, deleting, or modifying" its terms, the Magistrate Judge concluded that the arbitrator was bound to apply the express language of the CBA in accordance with her own factual findings.  Accordingly, the Magistrate Judge found that the arbitrator acted beyond her authority when she concluded that Shaw did not have just cause to terminate Mr. Endicott.  And because the arbitrator's just-cause determination was done in direct opposition to the plain language of the CBA, the Magistrate Judge recommended that the award be vacated under 9 U.S.C. § 10(a)(4).

Despite recommending that the arbitration award be vacated, the Magistrate Judge continued in his analysis and addressed Shaw's final contention – that the arbitrator acted outside her authority in awarding a remedy inconsistent with the

CBA.  The Magistrate Judge noted that the CBA specifically permitted arbitrator-crafted remedies and in such cases, "a court is not permitted to examine the factual basis or legality of the damages award."   (Doc. # 39, at 19.)   Because the Magistrate Judge appropriately determined that the arbitration award was due to be vacated, however, additional review and analysis on the award's remedy is unnecessary.

## C.   **The Objections**

Following the issuance of the Recommendation, both parties filed Objections (Docs. # 40, 41), and each party responded at length to the Objections of the opposing party (Docs. # 42, 43).

### 1.   *Wiregrass's Objection*

Wiregrass objects to the Magistrate Judge's recommendation that the arbitration award be vacated and argues that the arbitrator was well within her authority when she determined that Shaw lacked just cause to terminate Mr. Endicott.  Specifically, Wiregrass asserts that each of the arbitrator's two reasons for finding a lack of just cause – Shaw's failure to perform an independent investigation and Mr. Endicott's lack of knowledge regarding the status of the property – provides a sufficient and appropriate basis to uphold the arbitrator's award.  Moreover, Wiregrass takes issue with the Magistrate Judge's determination

that the arbitrator was not *interpreting* the CBA when she incorporated an implicit *mens rea* element into the CBA's list of offenses that constitute just cause.

Wielding case law and public policy's strong deference for the contractual interpretations of arbitrators, Wiregrass notes that "the Supreme Court has interpreted laws to include an element of *mens rea* . . . even when the text itself includes no such word." (Doc. # 40, at 5) (emphasis omitted). Incorporating a prerequisite of knowledge, Wiregrass argues that the Supreme Court was not ignoring the plain language of the law, but was interpreting the law. It argues that the same sort of interpretation formed the basis for the arbitrator's determination that Mr. Endicott did not actually do the thing prohibited under the CBA – *knowingly* possess government property. By second guessing the determination of the arbitrator, Wiregrass argues that Shaw is merely seeking to escape the terms of the CBA in favor of a more favorable forum.

### 2. *Shaw's Objection*

Shaw did not object to the ultimate recommendation of the Magistrate Judge, but does object to two of the Magistrate Judge's underlying findings. Specifically, Shaw contends that the Magistrate Judge erred when he determined that the arbitrator did not exceed her authority when she (1) concluded that Wiregrass had properly brought the grievance into arbitration, and (2) awarded damages for a period of time in which Mr. Endicott's health prohibited him from

working.   Because the Magistrate Judge's recommendation that the arbitration award be vacated is due to be adopted, Shaw's objection as to the appropriateness of the remedy is moot and will not be addressed.

**D.     Analysis**

Wiregrass is correct in its assertion that arbitrators are to be afforded great deference in the interpretation of collective bargaining agreements.   As the Supreme Court explained in *United Steelworkers of America v. Enterprise Wheel & Car Corp.*:

> The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards.

363 U.S. 593, 596 (1960).  However, as the Magistrate Judge recognized, "the law is well-established that an arbitrator 'can bind the parties only on issues that they have agreed to submit to him."  *Butterkrust Bakeries v. Bakery, Confectionary & Tobacco Workers Int'l Union, AFL-CIO, Local No. 361*, 726 F.2d 698, 700 (11th Cir. 1984) (quoting *Piggly Wiggly v. Piggly Wiggly*, 611 F.2d 580, 583 (5th Cir. 1980)).[1]  And while "[a] court generally must defer to an arbitrator's findings of fact[,]" once the facts are found, "an arbitrator may not ignore the plain language

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 2981.

of the contract." *Warrior v. Gulf Nav. Co. v. United Steelworkers of Am., AFL-CIO-CLC*, 996 F.2d 279, 280–81 (11th Cir. 1993) (internal citations and quotations omitted).

The same principle that forms the foundation for the great deference enjoyed by arbitrators in their contractual interpretations – that agreements entered into between consenting parties be upheld and given full force by courts – mandates that the present award be vacated.  The parties likely engaged in time-consuming, adversarial negotiations to ultimately arrive at the mutually agreeable CBA, and it is true, and Shaw concedes, that the CBA contains a provision whereby grievances may be submitted for binding arbitration.  However, the same CBA from which the arbitrator arrived at her jurisdiction, expressly limited the scope of her authority.  Specifically, Article 8, Section 3 of the CBA provides that an arbitrator "shall have the authority to interpret and apply the provisions of [the CBA][,]" but that the "arbitrator shall not have the authority to change, alter, amend, modify, add to, or delete from [the CBA]."  (Doc. # 26-1, at 94.)

While the parties expressly bargained for an arbitrator to be given the authority to interpret and apply the CBA and ultimately issue final and binding determinations, they did so with the understanding that the arbitrator would not "change, alter, amend, modify" or add to the other provisions bargained for in the CBA.  And as the Magistrate Judge properly recognized, "[i]t is an unobjectionable

principle that an employer can bargain to have included in a collective bargaining agreement a provision to the effect that certain identified types of employee conduct always provide just cause for discharge." *IMC-Agrico Co. v. Int'l Chem. Workers Council of the United Food & Commercial Workers Union, AFL-CIO*, 171 F.3d 1322, 1327 (11th Cir. 1999) (citations omitted).   Here, the CBA contained just such a provision, whereby both parties agreed that the "*possessing*, taking, removing, using, destroying, or tampering with Company or Government property without proper authority" would constitute just cause for termination. (Doc. # 26-1, at 92.)   Wiregrass could have negotiated "knowingly" possessing into the contract, but did not.  The arbitrator exceeded her authority by adding it to the CBA.

Because the arbitrator implicitly found that Mr. Endicott possessed the government property without authorization, she implicitly made a finding of just cause.   *See Butterkrust Bakeries*, 726 F.2d at 700 ("[B]ecause the collective bargaining agreement in this case reposed sole control over employee discipline in [the employer] and expressly prohibited modification of its terms, once the arbitrator found the prerequisite for discharge to be present, his authority over the matter ceased.").   While Wiregrass argues that the arbitrator's adding of a knowledge requirement to the possession offense was merely an act of interpretation akin to the Supreme Court's interpretation of a law criminalizing the

possession of an unregistered machine gun, such an analogy is attenuated and fails to recognize the important differences between bargained for agreements and laws proscribing criminal behavior.   In contract law, parties of equal stature are presumed to negotiate their own interests; indeed, labor unions are especially competent in this realm.   Were this court to accept the implicit addition of a knowledge requirement, it would effectively render the CBA's limitation on the arbitrator's ability "to change, alter, amend, modify, add to, or delete from" the CBA meaningless.  (Doc. # 26-1, at 94.)

In conclusion, the Magistrate Judge appropriately determined that the arbitrator exceeded her authority when she added a knowledge requirement to the CBA's delineation of offenses constituting just cause.   Accordingly, Wiregrass's Objection (Doc. # 40) is due to be overruled and the arbitrator's award vacated.

As to Shaw's limited objection to the Magistrate Judge's determination that the arbitrator did not exceed her authority when she concluded that Wiregrass had properly brought the grievance into arbitration, Shaw has failed to show how the arbitrator lacked the requisite authority to make a determination on timeliness. Unlike the preceding analysis in which it was determined that the arbitrator exceeded her authority when she modified the terms of the CBA by adding a *mens rea* requirement, here she determined that the parties, through various communications over the course of several months, chose to invoke the provision

of the CBA that specifically allowed for party-driven modification, to adjust the grievance procedure time line.  The Magistrate Judge properly determined that such a determination was within the authority of the arbitrator and was not to be second guessed.  Accordingly, Shaw's limited Objection (Doc. # 41) is also due to be overruled.

## III.  CONCLUSION

Based upon an independent and *de novo* review of the Recommendation to which both parties objected, it is ORDERED as follows:

1.    Wiregrass Metal Trades Counsel, AFL-CIO's Objection (Doc. # 40) is OVERRULED;

2.    Shaw Environmental & Infrastructure, Inc.'s Objection (Doc. # 41) is OVERRULED;

3.    The Recommendation of the Magistrate Judge (Doc. # 39) is ADOPTED;

4.    Wiregrass Metal Trades Counsel, AFL-CIO's Motion to Dismiss (Doc. # 24) is DENIED; and

5.    Shaw Environmental & Infrastructure, Inc.'s Motion to Vacate Arbitrator's Award (Doc. # 26) is GRANTED.

A separate final judgment will be entered

DONE this 30th day of March, 2015.

/s/ W. Keith Watkins
CHIEF UNITED STATES DISTRICT JUDGE